CLIENT FOLLOW-UP COMPANY *et al.*, Plaintiffs-Appellants, *v.* THOMAS C. HYNES, Cook County Assessor, *et al.*, Defendants-Appellees.— (AMERICAN CAN COMPANY *et al.*, Respondents-Appellees.)

First District (3rd Division)    No. 80-906

Opinion filed March 31, 1982.

Thomas E. Brannigan, of Flanagan, Bilton & Brannigan, of Chicago, for appellant Client Follow-Up Company.

Robert S. Cushman, Minard E. Hulse, Jr., and Thomas J. McNulty, all of Keck, Mahin & Cate, of Chicago, for appellant Technical Exhibits Corporation.

William M. Stevens and Marc A. Primack, both of Rooks, Pitts, Fullagar and Poust, of Chicago, for appellees Chicago Short Line Railway Company and Elgin, Joliet and Eastern Railway.

Philip P. Steptoe and M. Gwen Herrin, both of Isham, Lincoln & Beale, of Chicago, for appellee Commonwealth Edison Company.

Wayne W. Whalen, Scott J. Davis, and George N. Vurdelja, Jr., all of Mayer Brown & Platt, of Chicago, for appellees Continental Illinois National Bank and Trust Co. of Chicago, Continental Illinois National Bank and Trust Co. of Chicago, Trustee, and Continental Illinois Corporation.

Peter C. Alexander, of Welfeld & Chaimson, of Chicago, for appellees H. Kramer & Company and Prudential Insurance Co. of America.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael J. Sheridan, Assistant State's Attorneys, of counsel), for appellees Cook County Clerk, Assessor, and Collector.

Tyrone C. Fahner, Attorney General, of Chicago (Imelda Terrazino, Assistant Attorney General, of counsel), for appellee Department of Local Government Affairs, State of Illinois.

Michael M. Conway, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee First National Bank of Chicago, Trustee.

John J. Arado and Bruce I. Grogman, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee Mobil Oil Corporation.

William B. Davenport, of Chicago, for appellees First Chicago Corporation and First National Bank of Chicago.

Tefft W. Smith and Steven Lawson, both of Kirkland & Ellis, of Chicago, for appellee General Motors Corporation.

L. Bow Pritchett, James R. Bryant, Jr., and John J. Scully, all of Chicago, for appellee Illinois Bell Telephone Company.

George W. Moss, of Oak Brook, for appellee Interlake, Inc.

David L. Porter, of Chicago, for appellees Northern Trust Corporation and Northern Trust Company.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellees Peoples Gas, Light & Coke Company, Natural Gas Pipeline Company of America, Central Telephone Company of Illinois, Litton Precision Gear Division of

Litton Systems, Inc., Pettibone Corporation, A. Finkl & Sons Co., Acoustics Development Corporation, and Centel Communications Company.

Kevin M. O'Keefe, of O'Keefe, Ashenden & Lyons, of Chicago, for appellees Sears, Roebuck and Co., Republic Steel Corporation, Jewel Companies, Inc., Montgomery Ward & Co., Inc., J. C. Penney Company, Inc., and The Hartford.

Herman Smith, of Arvey, Hodes, Costello & Burman, of Chicago, for appellees American Can Company, Coca-Cola Company, D. Gottlieb & Co., E. I. Du Pont-de-Nemours and Company, and Genesco, Inc.

William R. Dillon and John B. Dillon, both of Concannon, Dillon, Snook & Morton, of Chicago, for fiduciary appellees.

JUSTICE RIZZI delivered the opinion of the court:

In a class action suit, plaintiffs, Client Follow-Up Company and Technical Exhibits Corporation, successfully challenged the constitutionality of the *ad valorem* personal property tax. (*Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 390 N.E.2d 847.) Plaintiffs then filed a petition seeking an award of attorney fees from members of the plaintiff class or, alternatively, from defendants, the assessor, collector and clerk of Cook County (county defendants) and the Department of Local Government Affairs. The class members and defendants filed various motions to dismiss which were granted by the trial court. We affirm.

On December 26, 1978, Client Follow-Up filed a complaint and on January 5, 1979, it filed a first amended complaint on its own behalf and on behalf of a class consisting of all entities in Cook County assessed for *ad valorem* personal property taxes for the year 1978 against the county defendants. Client Follow-Up sought a declaratory judgment that the assessment, extension and collection of 1979 *ad valorem* personal property taxes made after January 1, 1979, was unconstitutional. Certain injunctive relief was also sought. No mention of attorney fees was made in this first amended complaint nor in the original complaint.

On February 11, the court determined that the suit could be maintained as a class action. Shortly thereafter, Technical Exhibits was granted leave to intervene as a party plaintiff, to file a complaint and to name the Department of Local Government Affairs a party defendant. On February 19, the court issued its memorandum opinion and judgment order. The court made findings that the action was properly maintained as a class action, that adequate notice was given to the class in the form of widespread newspaper articles, and that the members of the class were adequately and competently represented. The court also found that the

*ad valorem* personal property tax had not been abolished by the 1970 Illinois Constitution, and it therefore granted defendants' motions to dismiss the action.

Plaintiffs then appealed directly to the Illinois Supreme Court pursuant to Rule 302(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 302(b)). The supreme court determined that section 5(c) of article IX of the 1970 Illinois Constitution prohibits the levy, extension or collection of *ad valorem* personal property taxes for the calendar year 1979 and thereafter, but that such taxes for the year 1978, collectable in 1979, were not abolished and were collectable. *Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 230, 390 N.E.2d 847, 857.

On August 16, 1979, plaintiffs filed their petition for attorney fees, seeking to have fees awarded on the basis of the common fund, substantial benefit and private-attorney-general theories. The trial judge, who was not the same judge who had originally permitted this cause to be maintained as a class action, approved a notice of hearing on the fee petition on September 12. Copies of the notice were to be mailed to class members who had paid more than $25,000 in 1977 *ad valorem* personal property taxes and to be served on all members of the class by publication.

Some class members filed special and limited appearances to contest the court's jurisdiction to award attorney fees. Other class members appeared generally, and they also contested the court's jurisdiction. In ruling on the jurisdiction issue, the court first observed that no fund had been created from which attorney fees could be paid. The court then determined that the notice of the institution of the original action in the form of newspaper articles was inadequate based on due process requirements. The court therefore concluded that it lacked jurisdiction over the class members to enter an award for attorney fees against the individual class members.

Regarding the petition for fees as it related to defendants, the court again stated that no fund had been created from which fees could be paid. The court also declined to award fees based on the private-attorney-general theory.

We first address the question of whether the court had *in personam* jurisdiction over class members in regard to plaintiff's petition for an award of attorney fees. Class action suits are recognized as exceptions to the general rule that absent parties may not be bound by a judgment *in personam*. This exception is made possible by the requirement that the representative parties in a class action fairly and adequately protect the interests of the class. (*Frank v. Teachers Insurance & Annuity Association* (1978), 71 Ill. 2d 583, 592, 376 N.E.2d 1377, 1380.) The court must find that the representative parties will fairly and adequately protect the interest of

the class as a prerequisite for maintaining a class action. (Ill. Rev. Stat. 1977, ch. 110, par. 57.2(3).) Critical to a finding of fair and adequate representation is a determination that the representative party is not seeking relief which is potentially antagonistic to the members of the class, for in that situation, due process prohibits a judgment from being binding on class members. (Ill. Ann. Stat., ch. 110, par. 57.2, Supplement to Historical and Practice Notes, at 134 (Smith-Hurd 1981); see *Hansberry v. Lee* (1940), 311 U.S. 32, 44-45, 85 L. Ed. 22, 28-29, 61 S. Ct. 115.) Class members who have differing interests or differing opinions as to the desirability of the relief sought have a right to be notified of the pendency of the action so that they may take whatever steps they deem appropriate to protect their interests. (*Frank v. Teachers Insurance & Annuity Association* (1978), 71 Ill. 2d 583, 596, 376 N.E.2d 1377, 1382.) Thus, even though notice to absent class members is left to the court's discretion (Ill. Rev. Stat. 1977, ch. 110, par. 57.4), notice may be constitutionally required where questions relating to the adequacy of representation or the propriety of adjudicating the dispute as a class action exist. *Frank v. Teachers Insurance & Annuity Association* (1978), 71 Ill. 2d 583, 593, 376 N.E.2d 1377, 1381.

The class members here contend[1] that they were not fairly and adequately represented by plaintiffs and that the notice provided by the newspaper articles was insufficient to protect their right to due process. Moreover, they argue that the notice they received regarding the fee petition did not overcome this earlier deficiency.

Class members argue that their interests regarding the *ad valorem* personal property tax were not fairly and adequately represented by plaintiffs because their interests were antithetical to those of plaintiffs. Since it was clear that any "replacement tax" enacted by the legislature would adversely affect some class members by increasing their tax burden, they would have preferred that the *ad valorem* personal property tax remain in effect for as long as possible. Thus, while plaintiffs sought to have section 5 of article IX of the 1970 Illinois Constitution declared a mandatory direction to the legislature to abolish the *ad valorem* personal property tax as of January 1, 1979, class members would have urged that this section be interpreted as merely directory so that the *ad valorem* personal property tax would continue until such time as the legislature decided to replace it.[2] Additionally, class members question the propriety

---

[1] A total of 13 briefs were filed on behalf of various class members. The arguments presented were substantially the same. Therefore, the class members' arguments to which we refer represent a distillation of the arguments presented in the briefs.

[2] The relevant portion of article IX, section 5 of the Constitution reads: "(c) On or before January 1, 1979, the General Assembly by law shall abolish all ad valorem personal property taxes and concurrently therewith and thereafter shall replace all revenue lost by units of local

of adjudicating this matter as a class action because plaintiffs were only seeking a declaratory judgment and injunctive relief. Finally, class members argue that plaintiffs could not fairly and adequately represent the class in the matter of attorney fees since plaintiffs are seeking a judgment against the class members they ostensibly represent.

■■ We believe that under the circumstances of this case, the notice given to class members was constitutionally inadequate. We disagree with the finding made during the underlying action that "widespread newspaper articles" provided sufficient notice, because this notice was incomplete and untimely. Although several articles regarding this case may have appeared in newspapers, only two articles contained in the record appeared prior to the time when the trial court entered its judgment that the *ad valorem* personal property tax was unconstitutional. Neither article was prepared at the direction of any court. One article appeared in the "Suburban Trib," and it stated that Client Follow-Up was seeking to represent all Cook County businesses. Attorney fees were not mentioned. The second article appeared in the "Chicago Tribune." It gave no indication that the suit was proceeding as a class action or that attorney fees would be sought. Given the potential conflict of interest between plaintiffs and class members, the possible adverse consequences to class members, the question of the propriety of maintaining a suit for declaratory judgment as a class action and the ready availability of the class members' names and addresses, due process required that class members be given individual notice. See *Frank v. Teachers Insurance & Annuity Association* (1978), 71 Ill. 2d 583, 596, 376 N.E.2d 1377, 1382; see generally *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.

■■ We are not persuaded by plaintiffs' argument that class members were adequately represented and that the notice given was sufficient. Regarding the underlying action, plaintiffs argue that the tax was either constitutional or it was unconstitutional, and since both these positions were vigorously argued to the court, the need for notice to class members was not present. This contention is clearly unacceptable. To suggest that the interests of members of the plaintiff class which favored continuance of the *ad valorem* personal property tax were fairly and adequately protected by the arguments made by defendants is to distort the concept of due process beyond recognition.

■■ Equally untenable is plaintiffs' argument that class members will be

---

government and school districts as a result of the abolition of ad valorem personal property taxes subsequent to January 2, 1971. Such revenue shall be replaced by imposing statewide taxes, other than ad valorem taxes on real estate, solely on those classes relieved of the burden of paying ad valorem personal property taxes because of the abolition of such taxes subsequent to January 2, 1971. ° ° °"

fairly and adequately represented at the hearing on the attorney fees petition. Even if the trial court correctly determined that plaintiffs fairly and adequately represented class members and that adequate notice was given, that determination applied only to plaintiffs' complaints for declaratory judgment and not to their petition for attorney fees since the court was not apprised that plaintiffs intended to seek fees. Obviously, plaintiffs could not continue to represent the class at the hearing because their interests are adverse to those of the class members in this matter. Plaintiffs' observation that the able attorneys now representing the class members in challenging jurisdiction could represent them at the fee hearing misses the point. None of these attorneys represent the class. Essentially, plaintiffs are attempting to transform members of a plaintiff class which they were representing into members of a defendant class which they are suing and which has no representative parties. We do not believe that due process or the law surrounding the use of class actions in Illinois permits classes to be treated in such a manner. Plaintiffs may not unilaterally redefine the scope of the class action suit.

■■ The fact that notices regarding the hearing on the petition for fees were mailed to certain class members and were published does not remedy the prior due process violations. By the time the class members received this notice, they were foreclosed from arguing the merits of the tax issue and were effectively precluded from seeking exclusion from the class (Ill. Rev. Stat. 1977, ch. 110, par. 57.5(b)). To give notice to class members after a decision on the merits is to give notice after the reasons for giving it have ceased to exist. See *Hoover v. May Department Stores Co.* (1978), 62 Ill. App. 3d 106, 134, 378 N.E.2d 762, 783 (Wineland, J., dissenting), *case rev'd on other grounds* (1979), 77 Ill. 2d 93, 395 N.E.2d 541.

■■ Accordingly, we conclude that in the absence of timely individual notice required by due process, the trial court correctly determined that it lacked jurisdiction to enter a judgment against class members for attorney fees.

■■ Plaintiffs next contend that the trial court's determination that there was no fund from which attorney fees could be paid was erroneous. Under the "American Rule," each party must bear its own costs of litigation and attorney fees absent legislative authority to the contrary. One exception to the American Rule is the "common fund" theory, which permits attorney fees to be awarded when a fund is preserved or recovered for the benefit of others in addition to the plaintiff. (See *Kaplan v. Mahin* (1979), 79 Ill. App. 3d 848, 851, 399 N.E.2d 315, 318.) However, if no fund has been placed under control of the court, then the court lacks authority to award fees. See *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 440-41, 356 N.E.2d 524, 527.

■ Here, plaintiffs contend that they were entitled to recover attorney fees from class members under the common fund theory on the basis that the fund from which attorney fees could be paid is in the hands of the individual class members. The fund consists of 1979 and subsequent *ad valorem* personal property taxes, less any replacement tax payments. Plaintiffs argue that this fund is within the court's jurisdiction because a court has jurisdiction and power to render *in personam* judgments against class members in a class action. Plaintiffs' argument must fail, however, in light of our determination that the court never acquired *in personam* jurisdiction over the class members because they had not been accorded their due process rights. The court could not, therefore, accede to plaintiffs' request "to exercise its *in personam* jurisdiction over the Class Members and create a fund by ordering each Class Member to contribute to the fund * * *" and then "exercise its *in rem* jurisdiction over the fund to pay attorneys' fees * * *."

■ Another exception to the American Rule is the "substantial benefit" theory. This exception permits an award of attorney fees where the litigant has conferred a substantial benefit on the members of an ascertainable class and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among the class members. *Mills v. Electric Auto-Lite Co.* (1970), 396 U.S. 375, 393-94, 24 L. Ed. 2d 593, 607, 90 S. Ct. 616, 626; see *Trustees v. Greenough* (1881), 105 U.S. 527, 532-33, 26 L. Ed. 1157, 1160; *Kaplan v. Mahin* (1979), 79 Ill. App. 3d 848, 850, 399 N.E.2d 315, 318.

Plaintiffs' argument that they should be awarded attorney fees under the substantial-benefit theory is unavailing. In *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 442, 356 N.E.2d 524, 528, the Illinois Supreme Court held that "in the absence of a fund, a plaintiff's attorney is not entitled to attorney's fees merely because he has conferred a benefit upon members of a class." (See *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 329-30, 269 N.E.2d 465, 469; *cf. Sprague v. Ticonic Bank* (1939), 307 U.S. 161, 167, 83 L. Ed. 1184, 1187, 59 S. Ct. 463 (fund need not be formally created).) As discussed above, no fund has been created here, nor does the court have jurisdiction to create one. Accordingly, the substantial benefit theory is inapplicable here.

■ Under the circumstances, we conclude that the trial court properly dismissed plaintiffs' petition for attorney fees as it related to the class members.

We next address plaintiffs' alternate argument that they were entitled to an award of attorney fees against defendants. Plaintiffs again rely upon the common fund and substantial-benefit theories. In addition, they argue that the private-attorney-general doctrine provides another basis upon which they could be awarded attorney fees. Under this doctrine, attorney

fees may be awarded when the services rendered benefited the public interest.

■■ ■ Regarding the common-fund theory, plaintiffs argue that a fund was created by virtue of the fact that plaintiffs' successful prosecution of the tax action obviated the county's expenditure of funds for the assessment, extension and collection of the *ad valorem* personal property tax, and it obviated the expenditure of State funds to assess the *ad valorem* personal property tax on capital stock through the Department of Local Government Affairs. The amounts saved thereby constitute a fund from which attorney fees could be paid. However, a similar argument was rejected by the supreme court in *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 356 N.E.2d 524. There, the representative of a plaintiff class which had succeeded in obtaining tax relief sought to be paid attorney fees from the treasuries of various taxing bodies because his efforts created additional tax funds for these taxing bodies. The *Hamer* court declined to recognize such savings as a specific fund under control of the court. Likewise, the alleged savings to defendants here do not constitute a fund within the court's control from which attorney fees could be paid. Plaintiffs' reliance on *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897, and *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1, is unavailing. The amounts which defendants will no longer need to administer the *ad valorem* personal property tax do not consist of taxes that were illegally collected (*Leader*) or illegally diverted (*Flynn*). The absence of any fund here is underscored by the fact that plaintiffs sought only injunctive relief and a declaratory judgment, not the return of any taxes previously paid. (See *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority* (1972), 51 Ill. 2d 126, 130-31, 281 N.E.2d 338, 340.) Under the circumstances of this case, plaintiffs cannot be awarded attorney fees from defendants pursuant to the common-fund theory.

■■ Since no fund has been created here, we must also reject plaintiffs' substantial-benefit theory. As we stated above, absent a fund, the attorney representing the class is not entitled to attorney fees merely because he has conferred a benefit upon members of the class. See *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 442, 356 N.E.2d 524, 528.

■■ Finally, we do not believe that plaintiffs are entitled to an award of attorney fees under the private-attorney-general doctrine. In *Hamer*, the supreme court declined to permit the use of this doctrine in Illinois absent legislative authority. Quoting from *Alyeska Pipeline Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 247, 44 L. Ed. 2d 141, 147, 95 S. Ct. 1612, 1616, where the United States Supreme Court rejected application of this doctrine in the Federal courts absent statutory authority for it, the court stated: " '[I]t would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in the manner

and to the extent urged by respondents * * *. [Citation.]' We believe that such a determination by this court would be equally inappropriate." (64 Ill. 2d 434, 442, 356 N.E.2d 524, 528.) Since there is still no legislative authority for an award of attorney fees based on the private-attorney-general doctrine, the trial court properly refused to award attorney fees based on the private-attorney-general doctrine.

We therefore conclude that the trial court did not err in dismissing plaintiffs' petition for attorney fees as it related to defendants.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.