ALUMINUM COIL ANODIZING CORPORATION, Plaintiff-Appellee and Cross-Appellant, *v.* THE FIRST NATIONAL BANK AND TRUST COMPANY OF BARRINGTON, Trustee, Defendant-Appellant and Cross-Appellee.—THE FIRST NATIONAL BANK AND TRUST COMPANY OF BARRINGTON, Trustee, Plaintiff-Appellant and Cross-Appellee, *v.* ALUMINUM COIL ANODIZING CORPORATION, Defendant-Appellee and Cross-Appellant.

Second District    No. 75-445

Opinion filed September 21, 1978.

Michael C. Poper and W. Randal Baudin, both of Zukowski, Zukowski, Poper & Rogers, of Crystal Lake, for appellant.

Charles F. Marino, of Chicago, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This case involves a 10-year lease of a building entered into in 1962 between defendant, Aluminum Coil Anodizing Corp., and a previous title holder. Subsequently the building was sold to plaintiff, First National Bank and Trust Company of Barrington, as trustee; the lease was also assigned in 1965 to plaintiff. In December 1968, plaintiff filed a complaint for forcible entry and detainer. Defendant then filed an action for an injunction to restrain plaintiff from proceeding with the F.E.D.; plaintiff counterclaimed alleging various violations of the lease and for expenses incurred in making repairs to the premises. All of the actions were consolidated for trial. A bench trial began in October 1971 and the court issued its memorandum of decision and order on May 24, 1972. That order found that certain violations of the lease had occurred, but that defendant would be allowed until June 30, 1972, to remedy the violations. On June 29, 1972, defendant filed its report supported by affidavit showing that the violations had been cured. The same day the court ordered that plaintiff had a reasonable time to inspect the premises, and a reasonable time thereafter to file objections to the report. The lease having expired, defendant vacated the premises on December 31, 1972, and surrendered possession to plaintiff.

On June 10, 1975, plaintiff filed a petition seeking over $55,000 based on the violations the court had previously found; the petition also alleged that defendant had not corrected those violations. On defendant's motion the court struck all claims based on the earlier violations, but did allow plaintiff to recover $14,000 of attorneys' fees and other expenses. Plaintiff appeals contending the court erred in its 1972 finding that plaintiff could not recover for damage to steel bar joists which was caused by defendant;

plaintiff also appeals the striking of its 1975 claims on the earlier violations. Defendant cross appeals the granting of fees and expenses.

■■■ We note first that neither the May 24, 1972, order nor the June 1972 order were final orders. However, plaintiff was only allowed a reasonable time to object to defendant's report that the violations had been cured. Assuming arguendo that plaintiff's 1975 petition can be construed as an objection, we do not believe that this document was filed within a reasonable time. The failure to assert a known right and the lapse of time must work in conjunction with the circumstances to prejudice the adverse party in order to support the doctrine of laches. (*Rodriguez v. Koschny* (1978), 57 Ill. App. 3d 355, 373 N.E.2d 47.) The prejudice in making defendant wait nearly three years for an inspection of repairs to a building, including 30 months that defendant was not in possession of that building, is manifest. Plaintiff's failure to file an objection within a reasonable time and the resultant prejudice to defendant leads us to conclude that it was guilty of laches, and the trial court was therefore correct in striking the 1975 claims for recovery based on the 1972 violations.

■■ In the 1972 memorandum decision plaintiff was not allowed to recover for the damage to steel bar joists in the building which was the subject of the lease, although the court found that damage to the joists was caused by fumes from sulphuric acid used by defendant in anodizing aluminum. A number of facts are relevant to the court's decision of this issue. The lease specifically stated that defendant was to occupy the premises "solely for the purpose of anodizing or otherwise processing aluminum * * *." Further, paragraph 25 of the lease contains a recognition that the defendant's manufacturing process may cause corrosion. The lease also contains language that required defendant to maintain and paint the premises and keep it in a good state of repair. On their installation, the steel joists had been painted with a red oxide primer, which does not protect against sulphuric acid fumes and the steel was thereafter painted over with normal paint by defendant. They were never treated with any preparation to shield them against the acid. While the lease imposed a duty of general maintenance and repair on the defendant, we are not willing to extend those agreed terms so as to imply that defendant had a duty to seek out possible areas of latent damage and to then protect against them, particularly in light of the fact that the terms of the lease recognize the intended use of the premises and the potential damage. In this regard we agree with the trial court's finding that considering the use for which the building was leased, the effect of acid fumes on steel, the failure of both parties to paint or otherwise apply a protective substance to the joists, and the total circumstances, defendant's sole responsibility regarding the joists was to clean and paint them as

required by the lease. Under these circumstances, a lessor who wishes to avoid the damage should take steps to prevent it or provide a remedy. ■ The lease provides that defendant will pay all reasonable costs, attorneys' fees and expenses incurred in enforcing the lease. In determining the issue of fees and expenses to be awarded, the trial court was in a superior position and we will not disturb that decision absent a manifest abuse of discretion. *Lencioni v. Brill* (1977), 50 Ill. App. 3d 802, 365 N.E.2d 1169.

We accordingly affirm the decision of the trial court.

Affirmed.

RECHENMACHER and NASH, JJ., concur.